**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**HERBERT JONES, *et al*.** *

**Plaintiffs** *

**v.** * **CIVIL NO. JKB-13-535**

**HOFFBERGER MOVING SERVICES LLC, *et al*.** *

**Defendants** *

* * * * * * * * * * * *

**MEMORANDUM**

This action was brought by Plaintiffs Herbert Jones, Joseph Jones, Rodney McFadden, and Raymond Green (collectively "Named Plaintiffs") against Hoffberger Moving Services LLC ("HMS"), Margaret A. Hoffberger, and Michael S. Hoffberger (collectively with HMS, "Defendants") (1) as a putative collective action for failing to pay wages due under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, *et seq.*, on behalf of the Named Plaintiffs and similarly situated employees of the Defendants; and (2) as an action on behalf of the Named Plaintiffs only for violations of the Maryland Wage Payment and Collection Act ("MWPCA") and the Maryland Wage and Hour Law ("MWHL"). (*See* Second Amend. Compl., ECF No. 47.) Now pending before the Court is Defendants' motion for summary judgment (Def. MSJ, ECF No. 132), Plaintiffs' cross-motion for summary judgment (Pl. Cross-MSJ, ECF No. 137), and Plaintiffs' motion to strike Defendants' affidavits (ECF No. 140). The issues have been briefed[1] and no hearing is required, Local Rule 105.6. For the reasons explained below, Defendants'

[1] The parties' cross-motions for summary judgment were briefed in ECF Nos. 132, 137, 143, and 147. Plaintiffs' motion to strike Defendants' affidavits was briefed in ECF Nos. 140, 142, and 144.

motion for summary judgment is GRANTED IN PART and DENIED IN PART, Plaintiffs' cross-motion for summary judgment is DENIED AS MOOT, and Plaintiffs' motion to strike Defendants' affidavits is DENIED.

## A. BACKGROUND[2]

HMS is a "commercial moving and storage company," and Michael and Margaret Hoffberger are its co-owners. (Second Amend. Compl. ¶¶ 8-10.) Plaintiffs are current and former HMS employees who have worked primarily as "helpers," responsible for loading and unloading Defendants' trucks. (*Id.* ¶¶ 8, 13.)

During the now contested period of employment, Plaintiffs would travel to HMS jobsites and were paid hourly to move "furniture, boxes, and other materials" for Defendants' clients—"commercial, non-profit, and governmental businesses." (*Id.* ¶¶ 5, 30.) To transport employees to jobsites, Defendants offered a van service every morning from the HMS warehouse to jobsites. (*See* Pl. Cross-MSJ at 21.) If employees wished to use Defendants' van service, they were required to arrive at the warehouse at a time specified by the company's dispatcher. (*Id.*) Occasionally, employees who had arrived at the warehouse to use Defendants' van service were asked to load moving equipment, "such as dollies, crates, padding, and masonite floor covers," onto the moving trucks. (*Id.*) Plaintiffs were compensated for such work time if Plaintiffs filled out timesheets indicating that they had done warehouse work. (*See generally id.* at 27-29.)

Plaintiffs contend, however, that they have spent regular and substantial amounts of additional time working for Defendants without proper compensation, in violation of the FLSA.

---

[2] When considering a motion for summary judgment, the facts and the inferences to be drawn therefrom are taken in the light most favorable to the party opposing the motion for summary judgment. *Scott v. Harris*, 550 U.S. 372 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). Because the parties have filed cross-motions for summary judgment, the Court must consider each motion separately on its own merits " 'to determine whether either of the parties deserves judgment as a matter of law.' " *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Phillip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). Having considered the motions, the Court is of the opinion that Defendants are entitled to partial judgment as a matter of law. Accordingly, the facts and inferences to be drawn therefrom are taken in the light most favorable to the party opposing the motion, Plaintiffs.

Many employees spent unpaid time at the warehouse each morning, waiting to be transported to jobsites. While waiting, Plaintiffs would sometimes be assigned to particular jobsites for that day (Second Amend. Compl. ¶ 38), and Plaintiffs would sometimes help load trucks with moving equipment, but without signing the warehouse time sheet. (Pl. Cross-MSJ at 24.) In all instances, Plaintiffs were not compensated for warehouse waiting time.

In addition, Plaintiffs were typically not compensated for travel time from the warehouse to jobsites. (Second Amend. Compl. ¶ 40.) Plaintiffs also contend that in using Defendants' van service, vans would regularly arrive at jobsites approximately thirty minutes before Defendants' moving trucks. (Pl. Cross-MSJ at 33.) Plaintiffs argue that they were directed only to log their start time after the moving truck had arrived, and so were not compensated for wait time at the jobsite. (*Id.*) Finally, Plaintiffs were not compensated for time spent traveling back to the warehouse to pick up paychecks. (*Id.* at 34.)

Defendants filed a motion for summary judgment on October 6, 2014. (Def. MSJ.) Plaintiffs filed a response in opposition and a cross-motion for summary judgment on November 7. (Pl. Cross-MSJ.) Defendants filed a response to Plaintiffs' cross-motion on December 12 (ECF No. 143) and Plaintiffs filed a reply on January 20, 2015 (ECF No. 147). Plaintiffs also filed a motion to strike Defendants' affidavits on November 21, 2014. (ECF No. 140.) Defendants filed a response on December 5 (ECF No. 142) and Plaintiffs filed a reply on December 16 (ECF No. 144).

## B. THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 132 and 137)

### 1. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

**2. The FLSA and Portal-to-Portal Act**

Congress enacted the FLSA in 1938 to establish a federal minimum wage and to mandate that employees be compensated for overtime. Within a decade, and in response to "a flood of litigation," Congress enacted the Portal-to-Portal Act. *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 516 (2014). The Portal-to-Portal Act "preserved potential liability for working time not made compensable by contract or custom but narrowed the coverage of the FLSA by excepting two activities that had been previously treated as compensable" under the FLSA. *IBP, Inc. v. Alvarez,* 546 U.S. 21, 27 (2005). First, employers are not liable for an employee's time

spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a)(1). Second, employers are not liable for an employee's time spent on "activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." *Id.* § 254(a)(2).

To determine an employer's liability for unpaid wages and overtime, the key inquiry is whether such activities are properly labeled "principal activities" under the Portal-to-Portal Act. The Supreme Court has interpreted the term "principal activity" to "embrace[] all activities which are an *integral and indispensable* part of the principal activities." *Steiner v. Mitchell*, 350 U.S. 247, 252-53 (1956) (emphasis added) (internal quotation marks omitted).

In the near sixty years since *Steiner*, lower courts have attempted to give meaning to the words "integral and indispensable." Many courts, including the Fourth Circuit, introduced tests that looked to whether such activities were *required* by company policy, or whether they *predominantly benefited the employer*. *See, e.g.*, *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 365-66 (4th Cir. 2011).

In December 2014, the Supreme Court revisited the meaning of "integral and indispensable," and offered a more precise, albeit more restrictive, view. *Integrity Staffing*, 135 S. Ct. 513. The Court rejected tests—like the one articulated in *Perez v. Mountaire*, 650 F.3d 350—that had focused on "whether an employer *required* a particular activity" or "whether the activity is for the *benefit* of the employer." *Integrity Staffing*, 135 S. Ct. at 519. Instead, the "test is tied to the productive work that the employee is *employed to perform*." *Id.* An activity is

only "integral and indispensable" to the performance of an employee's principal activities if "it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.*

The Supreme Court illustrated the application of this test by reviewing its application to the Court's precedent: Employers are liable for time that battery plant workers spend showering and changing clothes after working with toxic materials, *Steiner*, 350 U.S. at 249, 251, and for time that meatpacker employees spend sharpening knives, *Mitchell v. King Packing Co.*, 350 U.S. 260, 262 (1956). In both cases, employers cannot eliminate the disputed activity without impairing their employees' ability to work safely and efficiently. *See Integrity Staffing*, 135 S. Ct. at 518. In contrast, employers are not liable for time that poultry plant workers spend *waiting* to don and doff protective gear, *IBP*, 546 U.S. at 42, or for time that warehouse workers spend waiting in line to go through a post-shift security screening, *Integrity Staffing*, 135 S. Ct. 513. In these cases, an employer could dispose of the disputed activity without impairing their employees' ability to perform the work they were *employed to perform*.

An employer may be liable for unpaid work even if activities are not found to be integral and indispensable to an employee's principal work. The Portal-to-Portal Act also imposes liability on an employer for unpaid compensation "if such activity is compensable by either—(1) an express provision of a written or nonwritten contract . . . ; or (2) a custom or practice . . . ." 29 U.S.C. § 254(b).

In assessing whether Defendants violated the FLSA, the Court will consider each of Plaintiffs' claimed categories of unpaid work in succession. The Court will first assess whether such time is exempted under § 254(a) of the Portal-to-Portal Act by asking whether the claimed unpaid work is Plaintiffs' *principal activity*, or if the work is *integral and indispensable* to the

performance of such principal activities. If not, the Court will assess whether such work is nonetheless compensable under § 254(b) of the Portal-to-Portal Act, if the employer is party to a contract or has developed a custom which mandates compensation regardless of Plaintiffs' principal activities.

**3. Application of § 254(a) of the Portal-to-Portal Act**

Plaintiffs contend that Defendants violated the FLSA[3] by failing to compensate employees for the following time: (1) wait time at the warehouse each morning before traveling to jobsites; (2) travel time from the warehouse to jobsites; (3) wait time at the jobsite before moving trucks and moving equipment had arrived; and (4) travel time—after completing work at a jobsite—to pick up paychecks at the warehouse.

As a threshold matter, the Court holds that no reasonable jury could find that Plaintiffs were *employed* to wait at the warehouse, travel to jobsites, wait at jobsites, or pick up paychecks. *See Integrity Staffing*, 135 S. Ct. at 518 (noting at the outset that Integrity Staffing "did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products"). Instead, Plaintiffs were employed "to load and unload Defendants' trucks" for Defendants' clients. (*See* Second Amend. Compl. ¶¶ 8, 13.) This holding is not fatal to Plaintiffs' claims for unpaid wages, however. The Court now assesses each alleged unpaid time, considering whether these activities are *integral and indispensable* to the job of loading and unloading Defendants' trucks for Defendants' clients, and thus whether they are compensable under the FLSA.

---

[3] Both parties briefed only liability under the FLSA, with the exception of two conclusory footnotes stating that the MWPCA and MWHL parallel the FLSA's caselaw. (*See* Pl. Cross-MSJ at 35 n.24; ECF No. 143 at 5 n.1.) In light of the parties' insufficient treatment of this complicated matter, and especially considering the Supreme Court's recent jurisprudence in *Integrity Staffing*, the Court is not convinced that state claims under the MWPCA and MWHL are perfectly aligned with the FLSA. Therefore Plaintiffs' and Defendants' motions for summary judgment are denied to the extent that they sought a determination of liability under the MWPCA and MWHL, and the Court will order further briefing on this question.

"Whether an activity is preliminary or postliminary to principal activities for the purposes of § 254(a)(2) of the Portal-to-Portal Act is a mixed question of law and fact because the precise nature of the employee's duties is a question of fact, while application of the FLSA to those duties is a question of law." *Baker v. Barnard Const. Co., Inc.*, 146 F.3d 1214, 1216 (10th Cir. 1998) (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981)). In reviewing the parties' cross-motions for summary judgment, the Court will first assess whether Plaintiffs' allegations of unpaid work time are categorically exempt under the FLSA as a matter of law. If the Court does not so find—if instead Plaintiffs' alleged unpaid work time *could* be considered a principal activity as a matter of law—the Court will consider whether there exist genuine issues of material fact such that judgment as a matter of law would be premature.

**a. Wait time at the warehouse**

Plaintiffs are not entitled to compensation for time spent waiting at the warehouse before traveling to jobsites. Crucially, Defendants "could have eliminated the [wait time] altogether without impairing the employees' ability to complete their work," and thus Plaintiffs' wait time is not *indispensable*. *Integrity Staffing*, 135 S. Ct. at 518. Without waiting at the warehouse each morning, Plaintiffs would have still been able to load and unload Defendants' trucks for Defendants' clients—the job Plaintiffs were employed to perform— by arriving directly at the jobsites.

Granted, evidence suggests that Defendants relied on and benefitted from Plaintiffs' presence at the warehouse; Defendants used Plaintiffs' availability to reassign jobsite assignments or to direct employees to perform warehouse work. (*See generally* Pl. Cross-MSJ at 26-32.) Further, evidence suggests that employees were virtually required to use Defendants'

van service, and so Plaintiffs had no choice but to wait at the warehouse each morning. (*See generally id.* at 20-26.)

These facts do not aid Plaintiffs' claims, though. The Supreme Court expressly directed that courts should neither consider simply "whether the activity is for the benefit of the employer," nor should courts focus "on whether an employer *required* a particular activity." *Integrity Staffing*, 135 S. Ct. at 519. Instead, "[t]he integral and indispensable test is tied to the productive work that the employee is *employed to perform*." *Id.* Taking the facts in the light most favorable to Plaintiffs, no reasonable jury could find that Plaintiffs' time spent waiting at the warehouse each morning is integral and indispensable to loading and unloading moving trucks for Defendants' clients, and thus this wait time is not compensable under the FLSA.

Accordingly, Plaintiffs' cross-motion for summary judgment will be denied, and Defendants' motion for summary judgment will be granted, on the issue of pre-travel warehouse wait time. This holding extends to time spent waiting at the warehouse: (a) before Plaintiffs performed warehouse work; and (b) on those occasions where Plaintiffs were paid for subsequent travel time.

That holding aside, Plaintiffs have raised genuine issues of material fact as to whether all employees were compensated for time spent working at the warehouse. Plaintiffs allege that, on occasion, individuals would load moving trucks with moving equipment without being paid. (*See* Pl. Cross-MSJ at 28-29.) This occasional warehouse work was not "the productive work that the employee [was] employed to perform," *Integrity Staffing*, 135 S. Ct. at 519, and so does not justify compensation for all wait time at the warehouse. But such work is indeed integral and indispensable to the performance of Plaintiffs' principal activities, and Plaintiffs should have been compensated accordingly.

Both parties agree that some employees would occasionally do work at the warehouse, lifting equipment into the moving trucks. (*See* Pl. Cross-MSJ at 28-29.; ECF No. 143 at 14-16.) Both parties also appear to agree that employees were compensated for warehouse work *as long as* they filled out warehouse work timesheets according to company policy. (*See* Pl. Cross-MSJ at 28-29; ECF No. 143 at 14-16.) The parties disagree, however, about whether Defendants are liable for unpaid compensation where Plaintiffs allegedly worked in the warehouse but failed to fill out a warehouse work timesheet. The Court holds that both Defendants' and Plaintiffs' motions for summary judgment will be denied on this issue because genuine issues of material fact remain.

Plaintiffs should be compensated for time spent lifting and carrying moving equipment onto trucks regardless of whether Plaintiffs followed Defendants' time keeping protocol. Under the FLSA, "[w]ork not requested but suffered or permitted is work time." 29 C.F.R. § 785.11. If [t]he employer knows or has reason to believe that [the employee] is continuing to work[, then] the time is working time." *Id.*; *see also Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996) ("In order to be liable for overtime wages under the FLSA, an employer must have 'knowledge, either actual or constructive, of [that] overtime work.' " Further, Plaintiffs are entitled to subsequent travel time if they performed work at the warehouse under the continuous workday rule: "the compensable workday begins with the first 'principal activity' of a job and ends with the employee's last 'principal activity.' " *Perez*, 650 F.3d 350, 363 (4th Cir. 2011). For these reasons, Plaintiffs' claim for pre-travel warehouse work time survives Defendants' motion for summary judgment, and will be subject to further fact-finding at trial.[4]

[4] As suggested by Defendants, ECF No. 143 at 15-16, the Court expects to be briefed on whether enough Plaintiffs remain similarly situated with regard to Plaintiffs' claim for pre-travel warehouse work to further justify this collective action.

**b. Travel time from the warehouse to jobsites**

Plaintiffs are not entitled to compensation for travel time to and from the warehouse, unless Plaintiffs performed a principal activity prior to such travel. Commuting time is expressly exempted from the FLSA by § 254(a)(1) of the Portal-to-Portal Act. This is so even where employees are dependent on employer-provided transportation. In *Ralph v. Tidewater Constr. Corp.*, 361 F.2d 806 (4th Cir. 1966), a construction company employed a group of engineers and ironworkers to build bridges and tunnels across the Chesapeake Bay. The employees "had to have transportation from the shore to their places of work in the Bay," but the Fourth Circuit noted that this "travel time was within § 4(a)" of the Portal-to-Portal Act. Thus the construction company was not liable for travel time. *Id.* at 808-09. Likewise, Defendants in the instant matter are not liable for travel time solely because some, or perhaps most, employees believed they were required to use Defendants' van service.

Plaintiffs rely on 29 C.F.R. § 785.38 to bolster their claim for travel time, which in relevant part states: "Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work . . . ." 29 C.F.R. § 785.38. The Court has carefully considered this language, and finds that it gives further meaning to the Supreme Court's reasoning in *Integrity Staffing*. The regulation illustrates one example of an integral and indispensable activity, one that would be compensable as a principal activity. The facts in the instant matter are distinguishable, however.

No reasonable jury could find that Plaintiffs were required to meet at the warehouse *to receive instructions*. Rather, Plaintiffs were given job assignments the afternoon before each workday, (*see, e.g.*, ECF No. 137-12 at 1; ECF No. 137-13 at 3; ECF No. 137-14 at 66-67, 69,

77), and some employees testified that they were allowed to go directly to jobsites without Defendants' objection, (*see*, *e.g.*, ECF No. 137-15 at 6; ECF No. 137-19 at 4-5;[5] ECF No. 137-23 at 1). Similarly, no reasonable jury could find that Plaintiffs were required to meet at the warehouse *to perform work*. As discussed in Section B.3.a *supra*, Defendants only sporadically asked helpers to perform warehouse work. Instead, Plaintiffs were only required to meet at the warehouse, if at all, to take advantage of Defendants' van service, an activity which is not covered by 29 C.F.R. § 785.38.

For these reasons, the Court will deny Plaintiffs' cross-motion for summary judgment, and grant Defendants' motion for summary judgment, as they pertain to Plaintiffs' claims for travel time, with one narrow exception. Plaintiffs may still seek unpaid travel time wages for those employees who worked in the warehouse before traveling to jobsites, as discussed in Section B.3.a *supra*.

**c. Wait time at jobsites**

There are genuine issues of material fact as to whether Plaintiffs were properly compensated for time spent at the jobsite each morning, waiting for Defendants' moving truck and equipment to arrive. Plaintiffs allege that the employee transport vans would regularly arrive at jobsites well before the moving trucks that carried equipment, and employees could not begin work without equipment. (*See* Pl. Cross-MSJ at 33-34.) Defendants have contested this allegation and claim that Plaintiffs were paid as soon as they arrived at the jobsite, regardless of the moving truck's presence. (*See* ECF No. 143 at 21-22.)

The Court finds that Plaintiffs are entitled to be paid the moment they arrived at the jobsite if they arrived by Defendants' van service. Once employees arrived at the day's jobsite,

[5] The relevant portion of this deposition also includes inadmissible testimony about a story the deponent overheard. Regardless, the testimony does not present a genuine issue of material fact as to whether Plaintiffs were required to meet at the warehouse *to receive instructions* or *to perform work*.

Plaintiff's time spent waiting became a principal activity, integral and indispensable to the performance of the work that Plaintiffs were employed to perform. Plaintiffs were "engaged to wait," a compensable activity. *See* 29 C.F.R. § 790.7(h) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). In contrast, where Plaintiffs waited at Defendants' warehouse before traveling to jobsites, Plaintiffs were merely "waiting to be engaged." *See id.* Beyond these holdings, the question of whether Plaintiffs were adequately compensated presents a question for a factfinder to consider at trial. For these reasons, both Defendants' and Plaintiffs' motions for summary judgment will be denied on the issue of unpaid wait time at jobsites.

**d. Time spent picking up paychecks**

Plaintiffs are not entitled to compensation for time spent collecting paychecks. Such activity is squarely within the definition of an exempt, postliminary activity under the Portal-to-Portal Act. *See* 29 C.F.R. § 790.7(g) ("Other types of activities which . . . when performed under the conditions normally present, would be considered 'preliminary and postliminary' activities, include . . . waiting in line to receive pay checks."). Plaintiffs present no evidence or authority to suggest that the instant action is unique compared to "the conditions normally present." *Id.* Thus, the Court holds that no reasonable jury could find that time spent picking up paychecks is integral and indispensable to the work Plaintiffs were employed to perform. For this reason, the Court will grant Defendants' motion for summary judgment on Plaintiffs' claim for unpaid time spent picking up paychecks.

**4. Application of § 254(b) of the Portal-to-Portal Act**

Plaintiffs argue, in the alternative, that Defendants are liable for unpaid travel time based on a contract, custom, or practice pursuant to § 254(b) of the Portal-to-Portal Act. After careful

review, the Court holds that no reasonable jury could find that the activities in question are compensable by contract, or by custom or practice, under § 254(b) of the Portal-to-Portal Act.

First, there is no written or nonwritten contract. Plaintiffs base their argument under § 254(b)(1) on a discretionary policy articulated in Defendants' "Application for Employment," which in relevant part states that "[a]uthorizing travel time for a specific job *will be at the discretion* of the sales person responsible for the job and will be acknowledged in writing." (ECF No. 137-12 at 3 (emphasis added).) Defendants' "General Conditions of Employment" confirms the discretionary nature of Defendants' travel compensation policy: "Travel time will be limited to job sites at extreme distances. Authorizing travel time for a particular job *will be at the discretion* of a designated HMS employee or the salesmen responsible for the job." (ECF No. 137-13 at 4 (emphasis added).) Indeed, the parties arguably have an express contract *barring* compensation for travel time. Second, there is no evidence to suggest that Defendants had cultivated a custom or practice of compensating for travel time. *Cf. Sec'y of Labor, U.S. Dept. of Labor v. E.R. Field, Inc.*, 495 F.2d 749, 751 (suggesting that an employer may have established a custom or practice of compensating all travel time *to and from* jobsites through its "willingness to pay for the [one-way] trip to the jobsite") (emphasis added). There is no genuine issue of material fact on this matter. For these reasons, Plaintiffs' claim for unpaid travel time fails under § 254(b) as a matter of law, and Defendants' motion for summary judgment will be granted on this particular issue.

**5. Summary of Findings Under the Portal-to-Portal Act**

Taken together, Plaintiffs case will be narrowed substantially by the Court's holdings. Plaintiffs may continue to seek compensation for instances where employees were not paid while working at the warehouse, and also for those same employees' subsequent travel time. Further,

Plaintiffs may continue to seek compensation for wait time at jobsites, when Defendants' moving trucks were delayed. Aside from these remaining claims, Defendants' motion for summary judgment on Plaintiffs' FLSA claims is granted.

**6. Claims Against Margaret Hoffberger**

Defendants' motion for summary judgment also seeks to dismiss all claims against Margaret Hoffberger, on the theory that Ms. Hoffberger is not an "employer" within the meaning of the FLSA, MWPCA, or MWHL.

The FLSA treats as an employer "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA's provisions "should be broadly interpreted and applied to effectuate its goals," *Purdham v. Fairfax Co. Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011), which includes the intent "to lessen, so far as seemed then practicable, the distribution in commerce of goods produced under subnormal labor conditions" by eliminating low wages and long hours, *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). However, courts must also respect the corporate form, and an officer of a corporation is not necessarily an employer for FLSA purposes. *Caseres v. S&R Mgmt. Co.*, 2012 WL 5250561, at *3 (D. Md. 2012). The test of whether a person is an employer therefore depends on the "economic reality" of that individual's status in the workplace.[6] *Gionfriddo v. Jason Zink*, 769 F. Supp. 2d 880, 890 (D. Md. 2011). As this Court has previously explained,

> [a] consistent factor in cases from other circuits has been operational control over the individuals claiming to have been employees. The Second Circuit has noted the relevant factors to consider include " 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.' " *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). That court also observed that none

[6] This "economic reality" test also determines whether a person is an employer pursuant to the MWHL, *Newell v. Runnels*, 967 A.2d 729, 770 (Md. 2009), and the MWPCA, *Campusano v. Lusitano Constr. LLC*, 56 A.3d 303 (Md. Ct. Spec. App. 2012).

> of the four factors is dispositive and that a court should consider the totality of circumstances. *Id.* However, the *Herman* opinion further noted that it is not necessary to employer status to monitor employees continuously. Instead, "[c]ontrol may be restricted, or exercised only occasionally." *Id.*

*Speert v. Proficio Mortg. Ventures, LLC*, 2011 WL 2417133, at *3 (D. Md. 2011).

Ms. Hoffberger is the majority owner and managing member of HMS. (Dep. of Margaret Hoffberger, ECF No. 137-10, at 5-7.) Moreover, Michael Hoffberger testified that Margaret had the power to overrule Michael's decisions, though she never executed that authority. (Dep. of Michael Hoffberger, ECF No. 137-7 at 38-39.) Ms. Hoffberger also testified that she signed employee paychecks up until 2012, when HMS switched over to a "payroll cards" system. (Dep of Margaret Hoffberger at 6.)

On these facts, the Court finds that there exists an issue of material fact as to Ms. Hoffberger's "operational control" over HMS's employees. Thus, Defendants' motion for summary judgment to dismiss all claims against Ms. Hoffberger will be denied to allow for further fact-finding at trial.

**7. Plaintiffs' Claims for Overtime Wages**

Plaintiffs seek summary judgment on claims related to Defendants' failure to pay overtime from 2010 through 2012. The parties seemingly resolved this very issue through a proposed "Stipulated and Agreed Partial Judgment" (ECF No. 109), which was approved by the Court on April 24, 2014, (ECF No. 118). Now, Plaintiffs make a surprising, although not implausible, allegation that the Offer of Partial Judgment did not fully resolve Plaintiffs' claim for unpaid overtime wages as to all Plaintiffs and all Defendants. Certainly, it would be odd to settle claims in this piecemeal fashion, but not impossible.

If truly in dispute, as it appears to be, then the Court sees no alternative other than to allow additional discovery, followed by briefing on the question of whether Michael and

Margaret Hoffberger were ever liable in their personal capacity, and if so whether they remain liable after the Court approved the parties' offer of partial judgment, on this narrow claim for unpaid overtime wages.

### C. PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' AFFIDAVITS (ECF No. 140)

Plaintiffs filed a motion to strike the entirety of four of Defendants' affidavits, arguing that each affidavit contained conclusory statements and also contradictory testimony. (ECF No. 140.) The Fourth Circuit has limited the value of conclusory or contradictory affidavits by holding that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). This standard has come to be known as the "sham affidavit" rule. "Application of the sham affidavit rule at the summary judgment stage must be carefully limited to situations involving flat contradictions of material fact." *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 528 (D. Md. 2014).

The Court need not wade into whether Defendants' affidavits are impermissible, though. The issue is moot because the Court took all facts in the light most favorable to Plaintiff, as noted in footnote 2 *supra*. In doing so, the Court disregarded Defendants' affidavits without reaching Plaintiffs' allegations that the affidavits are improper. Even addressing Plaintiffs' contentions directly, the Court would find it improper to strike Defendants' affidavits in their entirety. While components of the affidavits may border on conclusory, the Court finds no "flat contradictions" of material facts. Regardless, the question is moot and the Court's holdings would be unchanged with or without consideration of Defendants' affidavits.

## D. CONCLUSION

Accordingly, an order shall issue GRANTING IN PART AND DENYING IN PART Defendants' motion for summary judgment (ECF No. 132), DENYING Plaintiffs' cross-motion for summary judgment (ECF No. 137), and DENYING AS MOOT Plaintiffs' motion to strike Defendants' affidavits.

DATED this 24th day of March, 2015.

BY THE COURT:

/s/

James K. Bredar
United States District Judge